IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARION HEALTHCARE, LLC, | |
| Plaintiff, | |
| v. | Case No. 21-cv-00873-SPM |
| SOUTHERN ILLINOIS HOSPITAL SERVICES AND HARRISBURG MEDICAL CENTER, INC., | |
| Defendants. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of a Motion to Dismiss filed by Defendants Southern Illinois Hospital Services ("SIH") and Harrisburg Medical Center, Inc. ("Harrisburg") (Doc. 11). Having been fully informed of the issues presented, this Court grants in full Defendants' Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Complaint filed by Plaintiff Marion HealthCare, LLC ("Marion") (Doc. 1) and are accepted as true for purposes of Defendants' Motion to Dismiss (Doc. 11). FED. R. CIV. P. 10(c); *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Marion is a freestanding multi-specialty ambulatory surgical treatment center located in the city of Marion in Williamson County, Illinois (Doc. 1, ¶ 6). SIH is an Illinois-chartered not-for-profit corporation that owns and operates a variety of hospitals, surgical centers, physician practices, primary care clinics, and specialty care clinics in southern Illinois (Doc. 1, ¶ 7). Harrisburg is also

an Illinois-chartered not-for-profit corporation that owns and operates an acute care hospital in the city of Harrisburg in Saline County, Illinois, as well as a variety of physician practices, primary care clinics, specialty care clinics, and outpatient medical clinics (Doc. 1, ¶ 8). All three hospitals serve a geographic area that Marion calls the "7-County Market" which consists of Jackson, Williamson, Franklin, Johnson, Perry, Saline, and Union counties (Doc. 1, ¶ 18). Of the seven counties, "Jackson and Williamson counties dominate," as they represent over 50% of the population along with almost 80% of the active physicians, 75% of the hospitals, and 100% of the ambulatory surgical centers in the 7-County Market (Doc. 1, ¶ 19).

On or about May 25, 2021, SIH and Harrisburg filed the appropriate application with the Illinois Health Facilities and Services Review Board to acquire and merge the Harrisburg hospital and Harrisburg-associated outpatient clinics and physician practices into the SIH medical system (Doc. 1, ¶ 2). Marion vehemently opposes this merger, arguing that the integration of Harrisburg into SIH violates federal and state antitrust law, more specifically: (1) § 7 of the Clayton Act, 15 U.S.C. § 18; (2) § 2 of the Sherman Act, 15 U.S.C. § 2; and (3) §§ 3(2)–3(3) of the Illinois Antitrust Act (740 ILCS 3) (Doc. 1, pp. 15–16).[1]

On June 29, 2021, Marion filed the instant Complaint (Doc. 1). Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, SIH and Harrisburg filed a Motion to Dismiss on October 10, 2021 arguing that: (1) Marion does not have Article III standing due to failure to allege a plausible injury-in-fact;

---

[1] While Marion includes Illinois antitrust law in its prayer for relief (Doc. 1, p. 15), Marion refers exclusively to federal statutory and case law to support its arguments in both its Complaint (Doc. 1) and its Response (Doc. 19).

(2) Marion fails to allege plausible antitrust injury; (3) Marion fails to allege proximate causation; and (4) that Marion's Complaint should be dismissed with prejudice (Doc. 11). Marion responded to SIH and Harrisburg's Motion to Dismiss on December 20, 2021 and refuted each and every argument therein (Doc. 19). SIH and Harrisburg subsequently filed a Reply in support of their Motion to Dismiss on January 18, 2022 (Doc. 22).

APPLICABLE LAW AND LEGAL STANDARDS

## I. Rule 12(b)(1)

If the plaintiff cannot demonstrate that he or she has standing to sue, Federal Rule of Civil Procedure 12(b)(1) directs that the matter must be dismissed for lack of subject-matter jurisdiction. To satisfy the case-and-controversy requirement of Article III, § 2 of the U.S. Constitution, the plaintiff must establish that he or she has constitutional standing to sue. U.S. CONST. art. III, § 2, cl. 1–3. In order to establish standing to sue, the plaintiff must adequately plead that he or she has suffered: (1) an injury-in-fact that is (2) fairly traceable to the harm committed by the defendant and (3) which the federal judicial system is likely able to redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The injury-in-fact must be "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . ." *Lujan*, 504 U.S. at 560 (citations omitted). In analyzing a 12(b)(1) motion to dismiss, this Court applies the same standard of "plausibility" from the *Twombly* and *Iqbal* cases and their progeny, which requires that any claim to relief be "plausible on its face." *Silha*, 807

F.3d at 174. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Rule 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

ANALYSIS

As Marion relies upon the principles of federal antitrust law in its Complaint (Doc. 1), the required hurdles that Marion must surmount are each addressed in turn.

## I. Article III Standing

Marion alleges that the acquisition of Harrisburg by SIH will "enhance SIH's already existing monopoly power in the market for acute care . . . and ambulatory surgery services," and thus "substantially reduce competition in those markets . . . potentially raising costs to patients, reducing choice of institutional providers . . .and, further, causing antitrust injury . . . ." (Doc. 1, ¶¶ 35–37). Conversely, SIH argues that Marion has not "plausibly pled an injury in fact" in accordance with the Article III standing requirements (Doc. 11, p. 6). *See* U.S. CONST. art. III, § 2, cl. 1–3; *Lujan*, 504 U.S. at 560–61; *Silha*, 807 F.3d at 173 (citing *Laidlaw*, 528 U.S. at 180–81).

The Supreme Court has established that "probabilistic injury" is not sufficient to meet the bar of an "injury-in-fact." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("The doctrine of standing . . . requires federal courts to satisfy themselves that 'the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction.'") (citing *Warth v. Seldin*, 42 U.S. 490, 498–99); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2012) ("[R]espondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending."). Thus, the mere probability that harm will occur to one of an organization or institution's members is not sufficient to establish an injury-in-fact.

Viewing Marion's allegations in the light most favorable to them, it is difficult to understand what concrete injuries it has alleged. While it is possible, and arguably probable, that the SIH-Harrisburg merger will have an effect on Marion's business, this does not absolve Marion of the requirement to plead a concrete injury. Marion argues that the "predictive thrust of Section 7 [of the Clayton Act] and Section 2 [of the Sherman Act]" allows such hypothetical future injuries to be claimed as injuries in fact. (Doc. 19, p. 9). Marion further argues that the illegality of the merger itself is enough to give rise to "the kinds of injury-in-fact that Marion alleges, including increased prices to patients, a reduction of choice of institutional providers and physicians, reduced referrals suppressing Marion's ability to compete, and the like." (Doc. 19, p. 9). Notwithstanding the foregoing, even Marion's own explanation includes an element of prediction, as Marion quotes Yogi Berra's statement that "[i]t's tough to make predictions, especially about the future." (Doc. 19, p. 2).

While it is also possible that a hospital merger in a rural area could lead to adverse effects for Marion, "'[p]lausibility' is not a synonym for 'probability' in this context . . . ." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). The allegations that Marion pleads are no more than conclusory and hypothetical. While predictive injuries can be addressed in the antitrust context, they cannot substitute for the concrete injury requirement conferred by Article III, § 2 of the U.S. Constitution.

Thus, Marion's Complaint cannot survive even the permissive "plausibility" pleading standard and must be dismissed under Rule 12(b)(1) for want of subject-

matter jurisdiction due to a lack of standing under Article III of the U.S. Constitution and clearly established Supreme Court precedent. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

## II. Antitrust Injury and Antitrust Standing/Proximate Causation

As the Federal Trade Commission ("FTC") and Department of Justice ("DOJ") can sue directly to enforce compliance with federal law, there are additional burdens that a private plaintiff must surmount in order to bring an antitrust suit. Key to this is the fact that Article III standing and antitrust standing (called "proximate cause" in the Seventh Circuit[2]) are not coterminous: "[t]o have antitrust standing, a party must do more than meet the basic 'case or controversy' requirement that would satisfy constitutional standing; instead, the party must show that it satisfies a number of 'prudential considerations aimed at preserving the effective enforcement of the antitrust laws.'" *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010) (citing *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (11th Cir. 1991)). The Seventh Circuit uses the same standard, insisting that a plaintiff must plead facts relevant to an "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (emphasis in original) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat,*

---

[2] SIH and Harrisburg's Motion to Dismiss (Doc. 11) cites *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018) (discussing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014)) to indicate that the Seventh Circuit has "eschewed" the term "antitrust standing" in favor of "proximate causation." Because many of the cited cases use the term "antitrust standing," in this analysis, both terms are held to refer to the same concept, namely, that the prospective antitrust plaintiff must demonstrate that the anticompetitive activities of the defendant are the proximate cause of the plaintiff's antitrust injury.

*Inc.*, 429 U.S. 477, 489 (1977)). Because "[p]roximate causation is an essential element that plaintiffs must prove in order to succeed on any of their claims," a plaintiff's failure to adequately plead it is grounds for dismissal under Rule 12(b)(6). *See Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018).

Marion argues that the merger between SIH and Harrisburg will: (1) "substantially, if not wholly, curtail . . . established [patient] referral patterns," (2) negatively affect Marion's income, availability, timeliness, and efficiency of patient services because of competition for physician candidates, and (3) cause SIH to charge higher prices to BlueCross BlueShield, thus resulting in "higher copays and patient-responsibility balances borne by Marion HealthCare and its employees" (Doc. 1, ¶¶ 40–42). Marion cites the Herfindahl-Hirschman Index ("HHI"), a "common measure of market concentration . . . used to determine market competition" for the proposition that the merger between SIH and Harrisburg will have a negative effect on the market concentration the 7-County Market area that Marion, SIH, and Harrisburg all serve (Doc 1, ¶¶ 24–34).

SIH and Harrisburg assert emphatically that "economic injury to one plaintiff is not antitrust injury" (Doc 11, p. 9) (emphasis omitted). They argue that Marion's alleged antitrust injuries are both "conclusory and entirely hypothetical" (Doc. 11, p. 9). In response, Marion argues that loss of physician referrals can be antitrust injury, citing *Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, 2014 WL 407446 (D. Idaho 2014), *aff'd*, 778 F.3d 775 (9th Cir. 2015) (Doc. 19, pp. 12–15). SIH and Harrisburg argue again in their Reply that "the Ninth Circuit did not analyze at

all antitrust injury or the plaintiffs' right to bring an action in the first instance, so the decision is irrelevant." (Doc. 22, p. 8) (citing *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 781 (9th Cir. 2015).

While Marion is correct that loss of patient referrals can be antitrust injury, it misses a key portion of the District Court's analysis: it refers to concrete data regarding decreases in patient referrals to the provider in question. *Saint Alphonsus*, 2014 WL 407446, at *13. Marion even cites this data in its Response (Doc. 19, p. 13). Additionally, while the Ninth Circuit affirmed the District Court's order of divestiture under the permissive abuse of discretion standard, it determined that, regarding Saint Alphonsus's argument that St. Luke's would raise prices, "the factual underpinnings of the district court's conclusion are suspect." *Saint Alphonsus*, 778 F.3d at 787. It determined that the documents considered by the District Court "merely state that St. Luke's hopes to increase revenue from ancillary services, not that it plans to charge higher prices." *Id.*

This points to the crux of the issue with Marion's arguments. Marion takes issue with SIH's claim that it "has no plans to change referral patterns" (Doc. 11, p. 10), stating that SIH's assertion "is not a judicially 'bankable' statement – at least not at this point – and therefore carries no weight." (Doc. 19, p. 11). Marion continues, arguing that "[t]he fact that SIH has no such plans now does not mean that its plans will not change tomorrow; its statement therefore does not constitute any kind of guarantee, let alone a judicially cognizable one on which Marion could base a claim if SIH failed to hold to it." (*Id.*). While Marion need not prove its case at this point, it must offer more than an argument pointing to SIH's capriciousness. In contrast to the

key case it cites, Marion's Complaint (Doc. 1) and Response (Doc. 19) showcase a dearth of supporting evidence, aside from the HHI competition argument (Doc 1, ¶¶ 22–24), to which Marion returns in its Response (Doc. 19, p. 8).

Marion erroneously contends that case law in the Seventh Circuit supports its arguments regarding the use of the HHI to show injury to competition (Doc. 1, ¶¶ 24–34; Doc. 19, p. 8) and § 7's "predictive thrust" (Doc. 19, p. 9). *See United States v. Phila. Nat. Bank*, 374 U.S. 321, 362 (1963) ("[W]e come to the ultimate question under [Section] 7: whether the effect of the merger 'may be substantially to lessen competition' in the relevant market . . . It requires not merely an appraisal of the immediate impact of the merger upon competition, but a prediction of its impact upon competitive conditions in the future."); *Hosp. Corp. of Am. v. F.T.C.*, 807 F.2d 1381, 1389 (7th Cir. 1986) ("Section 7 does not require proof that a merger or other acquisition has caused higher prices in the affected market. All that is necessary is that the merger create an appreciable danger of such consequences in the future. A predictive judgment, necessarily probabilistic and judgmental rather than demonstrable, is called for") (citations omitted); *Fed. Trade Comm'n. v. Advocate Health Network*, 841 F.3d 460, 467 (7th Cir. 2016) ("All that is necessary is that the merger create an appreciable danger of such consequences in the future.") (quoting *Hosp. Corp. of Am.*, 807 F.2d at 1389). Additionally, Marion's key case, *Saint Alphonsus*, would seem to support Marion's use of the HHI as its primary diagnostic tool, as the Ninth Circuit states that an "extremely high HHI on its own establishes the prima facie case." *Saint Alphonsus*, 778 F.3d at 788. The Ninth Circuit cites two cases from the District of Columbia Circuit for this proposition. *See F.T.C. v. H.J.*

*Heinz Co.*, 246 F.3d 708, 716 (D.C. Cir. 2001) ("Sufficiently large HHI figures establish the FTC's prima facie case that a merger is anti-competitive."); *United States v. Baker Hughes Inc.*, 908 F.2d 981, 983 (D.C. Cir. 1990) ("By presenting statistics showing that combining the market shares of Tamrock and Secoma would significantly increase concentration in the already highly concentrated United States HHUDR market, the government established a prima facie case of anticompetitive effect.").

However, all of these cases are distinguishable from Marion's argument for one simple reason: they were brought by the FTC using its power to enforce federal antitrust law against corporations engaging in anticompetitive conduct. The federal government is not required to demonstrate proximate cause as are private plaintiffs in reference to their antitrust injuries. "[P]roof of [an antitrust] violation and of antitrust injury are distinct matters that must be shown independently." *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 60 (1st Cir. 2016) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Also, "[a] private plaintiff seeking monetary relief must show actual, quantifiable damages 'by reason of' the antitrust violation." *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d at 60 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 543 (1983)). It is for this reason that Marion's arguments fall flat; Marion has not adequately established proximate causation as the suitable plaintiff here. Marion claims that it "and the public at large will be injured and financially damaged in amounts yet to be determined." (Doc. 1, ¶ 52). It is unclear what actual financial injury has occurred, and, if that injury does occur to the public (as

represented by the patient base that Marion, SIH, and Harrisburg all serve), then one of those members would be a more suitable plaintiff here.

This is not Marion's first suit against SIH. An appeal is currently pending before the Seventh Circuit. *See* Memorandum and Order, *Marion HealthCare, LLC v. S. Ill. Healthcare*, Case No. 12-cv-871, Dkt. 450 (S.D. Ill. Mar. 31, 2020). While Marion's concerns about market share are certainly understandable, their reasons for bringing suit are less so. As Marion has failed to allege either Article III standing or proximate causation, this issue would be better addressed by the FTC and the DOJ, especially as the current administration takes a heavier hand against hospital mergers that increase healthcare prices for consumers. *See* Exec. Order No. 14,036, 86 Fed. Reg. 36,987 (July 9, 2021) (adopting a stricter federal regulatory stance against hospital mergers that have "left many areas, particularly rural communities, with inadequate or more expensive healthcare options"). Marion mentions this Executive Order in its Complaint (albeit without an appropriate citation) but still takes matters into its own hands to enforce federal law. Here, enforcement is better left to the agencies responsible for doing so, or, at least, to a plaintiff able to adequately plead standing.

Although Marion hedges its bets and asks for either an evidentiary hearing or for leave to amend should its Complaint not survive SIH and Harrisburg's Motion to Dismiss (Doc. 19, pp. 5–6 n.1), SIH and Harrisburg urge this Court to dismiss Marion's Complaint with prejudice (Doc. 11, pp. 13–14). They argue that "amendment would be futile because Marion has not stated any facts it could plead that would satisfy Rule 12 and *Twombly*, nor could it" (Doc. 22, p. 5). While Marion's Complaint

(Doc. 1) is deficient, it is certainly conceivable that consolidation of healthcare facilities could cause economic harm to rural hospitals. That being said, Marion has neither met its burden to plead an injury-in-fact under either Article III nor established proximate causation as the appropriate plaintiff for an antitrust suit.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants Southern Illinois Hospital Services and Harrisburg Medical Center, Inc.'s Motion to Dismiss in its entirety. Plaintiff Marion HealthCare, LLC's Complaint is **DISMISSED** without prejudice. Although this Court is reticent to do so, Marion HealthCare, LLC is granted fourteen (14) days to file an amended complaint, up to and including July 13, 2022, or it may motion for leave to amend further based on the parameters of this Order.

**IT IS SO ORDERED.**

**DATED: <u>June 28, 2022</u>**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
